May it please the Court, my name is Vincent Chan, and I represent the respondents in this matter, Julio and Maria Balcazar. I would like to reserve one minute of my time for rebuttal. All right. You can watch the clock, but I'll try to help you on that. Thank you, Your Honor. Simply stated, the lawyer's job in an immigration proceeding is to stand between the client and the government, in this particular case, the immigration court. When the court interposes the client as the middleman in a war between immigration courts and what it perceives to be lawyer abuse of the system, that is an abuse of discretion, which requires reversal, based on the right of the alien to counsel of choice. Now, the court ordered us to look at two cases, the Escobar case and the Codras case, which are very instructive in part, but I would like to point out that they don't go nearly far enough for two reasons. The first of the reasons is that neither of those cases involved direct interference in an existing attorney-client relationship. In the Codras case, for example, the attorney had withdrawn, and the court was facing the issue of what proper admonitions and what waivers were necessary in that situation. In the Escobar case, which is even more closely related to this case, you had an attorney which the court sought to bar. But I would point out that in that case, even though the circuit court found that there was an abuse of discretion, the immigration court, in fact, allowed the attorney to proceed while he was present. Now, in this case, in the immigration court, the attorney was present on the day of the hearing, ready to go, ready to represent both of the clients. So what we're talking about here is not simply a failure of the judge to warn or admonish someone about a right to counsel and to find a waiver. We're talking about an existing attorney-client privilege and a right under the constitutional due process, under the statutory provisions. But Mr. Baltazar had been put on notice that the I.J. didn't want to see anybody from Mr. Vallinati's firm. That's correct, Your Honor. And that, as the Escobar case makes clear, is unacceptable. If you look at page 1335 of the opinion, it's very clear there that the immigration judge cannot exclude someone due to his exasperation with the system of lawyers. And the court went through and found that Mr. Vallinati was not under any kind of suspension threat before the I.J. at that time. Is that right? No, that's correct, Your Honor. Does the record reveal whether there was any prior contact between Mr. Vallinati and the I.J. that would have suggested that there was Mr. Vallinati was in some way unsuited to appear before this particular I.J.? There had been some kind of personal back and forth, or he had previously dismissed cases in which Mr. Vallinati had failed to show up? No, Your Honor. In fact, if you look at page 3 and 4 of the record, what happened was simply at the previous hearing, Mr. Vallinati had not shown up and had submitted an appearance form for another individual named Mr. Alexander. And so the judge, because of the absence of the attorneys, without a hearing, which my papers point out is necessary, or any other reason, simply said that next hearing comes, you can bring a lawyer, but you can't have Mr. Vallinati and you can't have Mr. Alexander because they didn't show up. Was the I.J. acting off of any other information that might have been available to him about Mr. Vallinati? And the reason that I ask, counsel, is according to matters that we were able to find in public records, newspaper reports, and a press release, Mr. Vallinati was suspended by the Executive Office of Immigration Review for three years in July of 2003 and has been suspended from the California bar for two years as of December of 2002. Now, my question then goes to whether Mr. Vallinati was under, whether the I.J. was sort of well aware of Mr. Vallinati's difficulties before immigration, before the immigration courts and was simply responding to, with exasperation that he was a new victim of something going on. Well, the record is devoid of any such information, and I would suggest that if the Court has such information, it should have given an opportunity for Mr. Vallinati and for the aliens to respond. After all, it was her attorney of choice, and as long as Mr. Vallinati was not suspended, because this was back in 97 and 99, before the events I think the Court related of 2003, that Mr. Vallinati, under the code and under regulation, had an absolute right to represent a client because he was a member of a bar, not under suspension or any other disciplinary action. We don't have anything in the record that would suggest he was suspended or otherwise. We simply, as I read the record, but maybe there's something else, we simply have an I.J. who, for whatever reason, failure to show up, and we probably in other cases as well, is just kind of at wit's end. Is that fair to say? I suspect it is, because the Escobar case I think actually involves some of the same individuals. Mr. Vallinati is named there as well. But once again, pointing the Court to page 1335, it explains that if there's exasperation in the system, it's not to be taken out on the alien. I don't question with the very news articles and the public records that there is a tremendous problem in the immigration bar. But the question is, how does one resolve it? Okay. Then the next question becomes, if we take it to this point and that they have the right to counsel, I am sure will be argued here as we're in the briefs, do you need prejudice or do we stop right here? Or is it prejudice per se, because we have a split of authority among the circuits on this topic, and we don't have a clear answer out of the Ninth Circuit. So maybe you can tell us what standard you think we would then apply if we get to this point of the analysis and why we should apply that standard. Well, in this case, Your Honor, it should be prejudice per se for two reasons. Number one, the relief that was sought was suspension of deportation. The record very clearly shows that the aliens were both prima facie eligible for that relief. The question was whether or not they would obtain it. And when we looked through the BIA opinion, the whole point was that everyone says, well, they wouldn't have obtained it. But the very point of due process, in part, is to go through a fair hearing. If we were simply to say at the outset, these people could never possibly have obtained the relief, therefore, there's no prejudice, it's a kind of circular reason. We deny them the right to counsel, which is the very right there to guarantee. Aren't you arguing prejudice, though? Aren't you arguing the potential of prejudice? I think Judge McKeon's question is, do we – is it prejudice per se? That is, look, we just stopped. No lawyer, that's it. If we find that it was a denial of the right to counsel, that's the end of it, even if there was almost – even if, arguably, there was nothing to save these people. They were on the boat or on the plane or whatever it is. That's the question. I think that's the question. Is it your view that it's simply prejudicial per se, requires a reversal, if, in fact, if, in fact, a person's denied a right to counsel? It does, and it's precisely for the two reasons that Your Honor has mentioned. Taking them in reverse, if, for example, the aliens were per se ineligible for suspension of deportation or whatever relief they were seeking, then obviously it could be a ruling that, as a matter of law, there would be no prejudice. However, now we're dealing with a procedural issue of procedural due process in which it goes into substantive because the point of having a lawyer is to have someone to argue your case and have someone who knows about the law and someone who's familiar with the procedures and the law to represent you. By denying you the opportunity to present your case and then claiming you have no case and you can't prove prejudice because you never had an opportunity to prove your case,  then there's no prejudice. And it also seems, and the other thing I'm struggling with, let's say we were to say, well, he didn't have a case or she didn't have a case. We always like to think that a lawyer can make a difference. We wouldn't know, for example, even if you have no case, maybe they'd give you a little longer on your time for voluntary departure because of your family situation   that it might be difficult for us to kind of second-guess prejudice, basically. And that might counsel for prejudice, per se, wouldn't it? I would agree that that is a secondary. There are other issues other than on the merits, for example, delay, obtaining secondary benefits, expediting, in fact, in certain cases, the proceedings. In this particular case, however, I'm just focusing on these aliens who show that they were eligible for suspension, but because they would deny the opportunity to present their case in any meaningful way, they really had no opportunity to present the case and to say, then, there's no prejudice because they didn't have a chance to present their case and, therefore, there was no case. I would say that that really should notate in favor, per se, for really wanting to second-guess the constitutional and statutory issues. And I see that I have a minute left, so I would like to do that. Thank you. Good morning. May it please the Court. My name is Cindy Farrier, and I'll be representing the government in this case. First of all, I just want to make clear that this, in fact, was a case where the immigration judge was quite exasperated with Mr. Vallinotti. I think that the record does show that he stated at page 78. Exasperated with the lawyer. Exasperated with the lawyer. Fair point. Fair point. That's the lawyer. Yeah. It may not come as a surprise to you that judges frequently get exasperated by lawyers. Now, the question is, what about the client? Well, the client here was not – in Escobar-Grijalva, there was the admonition that you should not make the client helpless or the alien helpless in the situation. In this case, the alien was not helpless with regard to Mr. Balthazar in the sense that he was given notice that he should have Mr. – not have Mr. Vallinotti or anyone else from his office appear with him. He indicated that he understood that. Then when it was played back to him at the beginning of the second hearing, he also indicated that he had understood that that was the case. So he did have a choice in which to bring another attorney. No, no. But you see, that's like saying, I have a gun to your head. Do you want me to shoot or not? Well, actually, I'd prefer you didn't shoot. Well, let's see. So, you know, when the immigration judge says to you, you understand this, I understand what you're saying, but that kind of begs the question, doesn't it? And that is whether the immigration judge, without any specific notice of disciplinary or proceedings against the lawyer, can basically say to the client, you can't have that lawyer come into my courtroom. Well, at that time, in 1999, before the immigration court, there, in fact, were not disciplinary regulations that he could employ with which to exclude Mr. Vallinotti from his courtroom. Why shouldn't we have a per se rule which says, look, if you don't allow a person counsel, if we find that the immigration judge doesn't allow counsel, that's the end of the inquiry. That's the end of the inquiry. And it's prejudicial per se. The reason being that we want to tell immigration judges that this is a very important right, a very fundamental right, and if you deny this right, if you deny this right, we're not going to have a generalized or even a specific inquiry whether, in this particular case, did it make a difference. Except that, in this case, the immigration judge did indicate that he understood that it was a very important right. It was a crucial right. He said, with regard to immigration. And then he denied it. They're going to take it away from immigration. Right. Okay. But let's not talk, let's, I understand that. But that was Judge McCune's point with the gun pointed. But I want to ask, I'm asking a different question. Here is my question. My question is, why shouldn't we have a rule which says, if you deny the right of counsel, that is prejudicial per se, and there is no reason to make a further inquiry? What's the reason not to have that rule? Because that rule isn't clear. Some circuits have said yes. Some have said no. What is the government's position as to why we ought to say, no, it's not prejudicial per se? Well, I hope that I'm answering your question in the way that you want. But I, there is a serious problem of aliens appearing repeatedly without representation. An immigration judge continuing proceedings a number of times to allow them to get representation. And if a judge was not allowed at a certain point to say, okay, listen, I've given you a continuance. And in this case, we had a case. But that's a perfect example, though, of something that's not this case. So, you know, let me finish. Because the question is, the, we don't have to make that decision of a situation where there's no counsel, and the Petitioner lollygags through many continuances and then finally shows up with a lawyer or doesn't show up with a lawyer. Because what we have here is we have a lawyer ready to go, licensed by the bar apparently. And both people say, I want that, I want her to represent me. So the question is, if we take this case, if you have a lawyer who's ready to go, who's not been disbarred, we go back to why isn't it prejudice per se if the judge says, well, that lawyer can't represent you? Well, in this case, the immigration judge would have allowed proceeding with Ms. Hagan for Ms. Baltazar, but not with regard to Mr. Baltazar, based upon his previous ruling. And at that point in time, the immigration judge didn't have a mechanism, as I said, to prevent, to complain about a particular attorney or to prevent him from appearing in his courtroom. And in this case... And so instead, because the government doesn't have any proceedings, we take it out on the petitioner? I mean, that doesn't seem like a logic that would get us to the result you want. Well, I guess that it's not. First of all, Ms. Hagan had also not entered her appearance, evidently, in this case for, with regard to Mr. Baltazar. Right. She's just standing there ready to go. Well, there's the form that you have to file. Right. So that hasn't been filed. I don't think you want to hang your hat on that one. No, but it is a point to be made. In addition, there is not any indication that she was any more familiar with the case. As the immigration judge had noted and as noted in Escobar-Grijalva, there is a problem with switching attorneys, with attorneys not being familiar with the case. Now, here, Ms.... Ms. Ferrier, I'd like to try to pursue just a little bit different line here. The... Mr. Vallinati is... The IJ says don't show up with Mr. Vallinati again or anybody from his law firm. And that ruling is in November of 1997. The Baltazars come back because of various continuances in March of 1999. So it is 16 months later and they show up with Ms. Hagan. Now, it seems to me that a judge has to have some right to control the courtroom. But why isn't... Why isn't the order to Mr. Vallinati not to show up in the courtroom or anybody else from his law firm so overbroad that it is unreasonable that Ms. Hagan should be barred from the courtroom who has not appeared previously before the judge and is counsel of choice and is otherwise well qualified? Why does an order to Mr. Vallinati and perhaps Mr. Alexander as well, who have both shown up and fumbled the ball, too broad? Well, because he, the immigration judge, had noted on the record not with regard specifically to Mr. Vallinati but that there had been a problem with attorneys not just Mr. Vallinati or not just the specific attorney but the next attorney not also being able to appear. Why should an entire firm be debarred from the courtroom? Well, because I think as you indicated, the immigration judge does have some right to control his courtroom and I understand the question about it being too broad. But Ms. Hagan hasn't offended the judge in any way and she is present and prepared to go forward. Well, you know, Mr. Vallinati also had the opportunity over that 16-month period to object to the judge's ruling by filing some sort of motion or some sort of... Except the judge's order, as you pointed out, there evidently were no mechanism, no formal mechanism for the I.J. to proceed as apparently there is in place today and I.J. does have a formal mechanism for debarring a particular attorney. Do you know whether that mechanism has ever been used to disqualify an entire law firm? No, I don't know if it has been used to disqualify an entire law firm but in this case, the immigration judge felt strongly enough that it was not only Mr. Vallinati but also Mr. Alexander who failed to appear and failed to offer any explanation. That's fine. Why does that extend to Ms. Hagan? Why is Ms. Hagan now barred from appearing in an I.J.'s courtroom? Well, with regard to this particular record, it's not clear on the record. However, there is, even in Escobar-Grijalva, it's noted that it was Mr. Vallinati's law firm and another person associated with it. Right, but if we had that in the record and we, you know, he may be a bad apple, I have no idea, but if we had all the stuff in the record and the judge said, look, it's not just this case but it's 12 other cases, you're late, you don't show up, you missed proceedings, we can't run a courtroom that way, then wouldn't we be in a different situation? But here, we're kind of left, you know, we didn't create the record, obviously, you're kind of stuck with it. You know, we're left with what could be only described as the barest of record, which is basically an exclusion order, isn't it? Well, just for that particular attorney and for that particular alien and the persons associated with that attorney. Right, but that gets back to these particular aliens actually hadn't done anything to aggravate the court, so they become, it's sort of an odd thing, maybe you could just clarify, when did the regulations come into effect regarding discipline? Disciplinary regulations came into effect on June 27th, year 2000. Okay, so what you're doing then is saying because we should decide because there were no formal disciplinary mechanisms that the judge could in effect discipline the attorney and whatever happens to the client is really overridden by the disciplinary action or the power of the court. Is that really your argument? Well, I would suggest that now this wouldn't have happened. But it did happen. But that was prior to the regulations. I mean, now there is mechanisms in place, and again, I should make clear that those regulations don't just say immediate disbarment unless there's been some sort of... We don't know that they would follow those. For example, we might have another immigration judge who just says, look, I've had it with this law firm. He doesn't go through the proceedings. He doesn't want to disbar them necessarily. He just says, don't show up with them. Well, I mean, the immigration judge, again, does have an opportunity to control his courtroom to the extent if attorneys flagrantly disregard the practices and the policies. This judge was just simply trying to have his policies followed and his rulings followed. Is this a widespread problem? I was intrigued by your remark about the problem of the people showing up continually without lawyers. Now I want to ask, I know we're over your time, but I want to ask the different question. Is it a problem where people show up with their lawyers and somehow the administrative law judge in his or her power to control the courtroom, whatever that means, denies counsel the right to appear on behalf of a petitioner? Do you think that's a widespread problem? I don't believe it's a widespread problem. Then what harm would be if this court were to say, if you show up with your lawyer, you show up with a lawyer and the court denies your right to proceed with that lawyer, that's prejudicial per se? If it's not a widespread problem and we have that rule, why then would that create a problem? Why would it be a problem for the court to say if you show up with an attorney and the IJ denies that? You don't have to show anything more. You don't have to show any prejudice. You don't have to show that you would have won your case or that you would have done this or done that. I don't know if that would be, like I said, I don't know if there's a widespread problem so I can't really comment on that. I think we have your argument in mind, thank you. Just with regard to prejudice, did you want any statements with regard to that from the government's perspective? I think we have in your brief and we understand what your argument is. We'll have to figure out where in the spectrum we want to come at. Thank you, Your Honor. I just want to briefly refocus my former remarks on the facts of this case. Forgetting about the immigration of ours exacerbation, forgetting about all the problems of the immigration courts and their overburdening, my client was there, both of them with a lawyer, ready to go. There was no inconvenience for the judge to go forward that day. It was denied. And I appreciate that courts and judges have a need to control their courtrooms. But in the absence of direct contempt, even an ordinary civil court cannot take away a person's right to counsel which runs parallel without a hearing. Certainly I can't fathom that an administrative law judge has more power than a federal district court judge or any other judge in this country and can remove an attorney at will. So I would simply urge, per say rule or not, that in this case my client's rights have been violated and the case should be remanded for hearing with the right of counsel of choice. Thank you. Thank you. I thank both counsel for arguments. The case of Balthazar v. Alcasar v. Ashcroft is submitted. And the next case for argument is Reyes v. Ashcroft. Thank you.
judges: McKeown, Bybee, Breyer